UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DANIEL SZAROLETA,

                Plaintiff,                07 Civ. 7639 (DLC)(KNF)

        -against-                **PLAINTIFF'S MOTION IN LIMINE**

METRO-NORTH COMMUTER RAILROAD,

                Defendant.
-------------------------------------------------------------X

POINT I

DEFENDANT SHOULD BE PRECLUDED FROM OFFERING
EITHER ORAL EVIDENCE OR DOCUMENTED EXHIBITS
CONCERNING PLAINTIFF'S DISABILITY PENSION

The defendant, in pre-trial discussions with the undersigned and the Court has referenced plaintiff's application and receipt of a disability pension from the U.S. Railroad Retirement Board. Any proof or even reference to this is admissible in a FELA case. The law in this regard has been clear for the last 40 years.

The United States Supreme Court in *Eichel v. New York Central Railroad Co.*, 375 U.S. 253, reversed a Second Circuit Court of Appeals Decision involving a railroad worker who suffered a permanent disabling injury. The railroad offered evidence that the plaintiff was receiving a disability pension from the Railroad Retirement Board. The railroad argued that evidence of the disability payments, although concededly inadmissible as an off-set to damages, was otherwise admissible to show the extent and duration of the disability suffered by the plaintiff. In effect, it would show a motive for not continuing to work. The Supreme Court disagreed:

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there

will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act of 1937, 50 Stat. 309, as amended, 45 U.S.C. §228b (a) 4, were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act.

Since the *Eichel* Decision, the Circuit Courts have uniformly held that disability pension benefits such as the ones we have in the case at bar, are inadmissible. More recently, this principle was restated in the Second Circuit in *Santa Maria v. Metro-North*, 81 F.3d 265 (2nd Cir. 1996). The reasoning behind this rule was articulated in the Second Circuit case of *Blake v. Delaware & Hudson Railway Co.*, 484 F.2d 204 (2nd Cir. 1973). In that case, the Court cites the Fifth Circuit in *Haughton v. Blackships, Inc.*, 462 F.2d 788 (5th Cir. 1972).

> The policy considerations for the collateral source are apparent. On the one hand, an employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for that purpose, should not be penalized by permitting the plaintiff a double recovery of his benefits under the fund as well as his full measure of damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor. 462 F.2d at 791.
> . . .
> . . . The collective bargaining contract between that employee group and the defendant Railroad includes, as an economic term, a requirement that the employer pay premiums directly to the insurer, much as an employer might at the direction of his employee deduct money from wages and forward them directly to that employee's creditor or bank savings plan. This policy is, in short, a fringe benefit given in part consideration for the employee's services. It is in no sense a mere gratuity nor an arrangement by which the company has undertaken voluntarily to indemnify itself against possible liabilities to injured employees under the FELA. Consequently, evidence of a disability pension is not admissible in a FELA case.

This is not to be confused with the regular retirement pensions, one each from MTA Metro-North and U.S. Railroad Retirement Board, to which plaintiff is entitled merely by being in the employ of defendant. Proof of these pensions can and must come into evidence to fully

explain plaintiff's special damages (i.e. the loss in value of to both retirement pensions), however this is markedly separate and distinct from a disability pension. Additionally, the disability pension is different from the Sick Liens which must be repaid pursuant to Collective Bargaining Agreement terms and proof of which does come in as to monies paid to plaintiff while out of work.

POINT II

DEFENDANT'S EXPERT DR. GEORGE UNIS SHOULD BE PRECLUDED FROM OFFERING ANY TESTIMONY REGARDING THE CAUSE OF PLAINTIFF'S DISC HERNIATION, THE NEED FOR SURGERY OR THE LENGTH OF TIME PLAINTIFF HAS BEEN OR WILL BE OUT OF WORK

Dr. George Unis, in his report, states "Mr. Szaroleta injured his lower back when he twisted it on 1/8/07. He underwent surgery on 3/12/07 with excision of the L5-S1 disc." Other than recounting various observations made of Mr. Szaroleta's physical condition made during a physical examination performed on 3/4/08, Dr. Unis does not offer a single opinion relating to the cause of the herniation giving rise to the 3/12/07 surgery, the need for the surgery in the first place, the length of time plaintiff has required to recover from surgery or his ability to return to anything but sedentary work. Fed.R.Civ.Pro. 26(A)(2)(B)(i) specifically requires "a complete statement of all opinions the witness will express and the basis and reasons for them." Consequently, Dr. Unis must be limited to his statements and opinions set forth in his report and this does NOT include any opinion regarding the cause of the herniation, the need for surgery, the length of time plaintiff has required to recover from surgery or his ability to return to anything but sedentary work.

POINT III

DEFENDANT'S EXPERT DR. GEORGE UNIS SHOULD BE PRECLUDED FROM OFFERING ANY TESTIMONY REGARDING KENNEDY'S DISEASE

The sum total of defendant's medical expert's statements relating to Kennedy's disease are as follows:

> "Mr. Szaroleta's history is significant for Kennedy's disease, a rare, progressive neuromuscular disorder, which is familial in nature."

> And

> "At the present time, examination of Mr. Szaroleta reveals the findings described above; his underlying Kennedy's disease may be a factor in the neurological findings that were present."

> And

> "Any assessment of his future disability needs to take into consideration his Kennedy's disease, which is a rare, progressively disabling neurological disorder."

The foregoing, coupled with the fact that defendant's expert was not provided any records relating to Kennedy's disease, despite defense counsel having them in his possession, specifically records from the National Institute of Health, where plaintiff was a participant in a rigorous clinical trial relating solely to Kennedy's disease, renders any comment he might have as to the effect of Kennedy's as purely speculative and wholly conjectural.

As noted in its pre-trial rulings, this Court is vested with the duty to act as gatekeeper with regard to expert testimony. The Second Circuit has interpreted these guidelines to require that "expert testimony should be excluded if it is speculative or conjectural" *Boucher v. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). In the case at bar, defendant seeks to illicit opinion testimony from Dr. Unis, an orthopedist, regarding the effect of Kennedy's Disease on the plaintiff's injuries. However, limited as he is by his expert report provided pursuant to

Fed.R.Civ.Pro. 26(a)(2)(B), Dr. Unis should be precluded from offering any testimony regarding Kennedy's disease.

Pursuant to the Federal Rules of Civil Procedure 26(a)(2)(B), defendant, wishing to offer the testimony of an expert witness, was obligated as follows:

> (B) *Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.[1]

Dr. Unis' qualifications were provided in the form of a curriculum vitae. Conspicuously absent was any ability to testify at trial on these matters. Even the statements he does make are that Kennedy's disease "may be a factor" and that Kennedy's must be "take[n] into consideration" in assessing Mr. Szaroleta's future. However, Dr. Unis does not actually go as far as offering an opinion on the effect of Kennedy's disease on Mr. Szaroleta's future. If the opinion is not contained in his required disclosure, then it certainly cannot be offered at trial for the first time. Similarly, the statement that something "may be a factor" is much different from

stating it is "more likely than not" or stating an opinion "to a reasonable degree of medical certainty". In sum, Dr. Unis has not offered an opinion relating to Kennedy's disease in his report and defense counsel has not bothered to provide him the records from which he could ostensibly make some kind of opinion. Consequently, Dr. Unis should be precluded from testifying to what role, if any, Kennedy's disease plays in plaintiff's complaints.

DATED: NASSAU, NEW YORK
        July 20, 2008

LAW OFFICES OF MICHAEL FLYNN, PC
Attorneys for Plaintiff
1205 Franklin Avenue
Garden City, NY 11530
(516) 877-1234

By: _____
    MARC WIETZKE

TO:    José Rios, Esq.
        Metro-North Commuter Railroad
        347 Madison Avenue, 9th Fl.
        New York, NY 10017

---

[1] It should be noted that defendant's expert disclosure remains deficient insofar as it is unsigned, it does not include a statement of compensation to be paid for either the examination or the testimony, it does not include a list of cases in which Dr. Unis has testified as an expert either at trial or deposition in the last four years.