UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
DANIEL SZAROLETA,                                          07 Civ. 7639 (KNF)

                                    Plaintiff,        **MEMORANDUM OF LAW
                                                       IN SUPPORT OF MOTION FOR
              -against-                                A NEW TRIAL AND FOR A STAY OF
                                                       ENFORMCEMENT OF THE JUDGMENT**

METRO-NORTH COMMUTER
RAILROAD,

                                    Defendant.

          The defendant, Metro-North Commuter Railroad ("Metro-North") moves for an order

pursuant to FRCP §50(b) to set aside the verdict and enter judgment in favor of Defendant on the

ground that Plaintiff failed to prove negligence by the defendant or, in the alternative, for an order

pursuant to FRCP §59 directing a new trial on the ground that the verdict is 1) against the weight of

the evidence; and 2) the result of palpably improper statements and evidence submitted by the

plaintiff.  Defendant also moves pursuant to FRCP 62 (b) and (f) for a stay of the enforcement of

the judgment pending the outcome of this motion and/or appeal thereof.

## I. PRELIMINARY STATEMENT

          Plaintiff, who was employed as an Engineer for Metro-North, sued under the Federal

Employer's Liability Act §51, *et seq.* ("FELA") for injuries allegedly sustained as a result of an on-the-

job incident on January 8, 2007.  After trial, the jury found the defendant negligent and that the

negligence caused injury to the plaintiff.  The jury awarded the plaintiff $81,750.00 for past pain and

suffering and judgment was docketed accordingly on July 8, 2008.  A copy of the judgment is

annexed hereto as Exhibit A.  Defendant, pursuant to FRCP §59, moves for a new trial on the

ground that the verdict is 1) against the weight of the evidence; and 2) the result of impalpably

improper and prejudicial testimony and evidence submitted by the plaintiff.  Defendant also moves

pursuant to FRCP 62 (b) and (f) for a stay of the enforcement of the judgment pending the outcome

of this motion and/or appeal thereof.  Defendant reserves the right to supplement its motion after

receipt of the trail transcript.

## II. ARGUMENT

As an employee of Metro-North, Plaintiff sued under the Federal Employers Liability Act,

Section 51, *et. seq.* ("FELA"), for injuries he allegedly sustained while in the course of his

employment. The FELA provides in part, as follows:

> "Every common carrier by railroad while engaging in commerce between any of
> the several states . . . shall be liable in damages to any person suffering any
> injury while he is employed by such carrier in such commerce . . . for such
> injury . . . resulting in whole or in part from the negligence of any of the
> officers, agents, or employees of such carrier, or by reason of any defect or
> insufficiency." (45 U.S.C. §51.)

The basis of Metro-North's liability, if any, is negligence and not the mere fact that an injury occurs

while plaintiff is working.  Moreover, that negligence must cause the injury or plaintiff may not

recover. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 484 (1943); *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S.

54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610, 617 (1943) ; *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 652-3,

67 S.Ct. 598, 600, 91 L.Ed. 572, 575-6 (1947); *Wilkerson v. McCarthy*, 366 U.S. 940, 69 S.Ct. 744, 93

L.Ed. 1098 (1949); *Milom v. New York Central R. Co.*, 248 F.2d 52 (7th Cir. 1957), *cert. denied*, 355 U.S.

953, 78 S.Ct. 537, 2 L.Ed.2d 529 (1958); *Atchison, T. & S.F. Ry. v. Toops*, 281 U.S. 351, 50 S.Ct. 281,

74 L.Ed. 896 (1930).

Under the FELA, an employer is not the guarantor or insurer of its employees' safety.

Proof of injury without proof of negligence is not enough. *Ellis, supra*, 329 U.S. at 652-3; *Brady v.*

*Southern Ry. Co., supra*, 320 U.S. at 484; *Gill v. Pennsylvania R. Co.*, 201 F.2d 718, 720 (3rd Cir.), *cert.*

*denied,*346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343 (1953). *Cf., Glover v. The Atchison, Topeka, & Santan Fe*

*Railway Company*, 841 S.W.2d 211 (C.A. Mo., W.D. 1992). The railroad is not bound to anticipate every possible accident because a railroad is necessarily attended by some danger and it is impossible to eliminate all danger. The Supreme Court noted in *Missouri Pac. R. Co.*, *supra* that "no employment is free from danger." Metro-North is bound only to exercise the care which the particular circumstances reasonably demand. *Ellis, supra* at 653; *Atlantic Coast Line R.R v. Dixon,* 189 F.2d 525, 527 (5th Cir.), *cert. denied*, 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628 (1951); *Inman v. Baltimore & Ohio R. Co.*, 361 U.S. 138, 140, 80 S.Ct. 242, 243-4, 4 L.Ed.2d. 198, 201 (1959) ; *Rubley v. Louisville, & N. R. Co.*, 208 F. Supp. 798 (E.D. Tenn. 1962); *Kimbler v. Pittsburg & L. E. R. Co.*, 331 F.2d 383, 385 (3rd Cir. 1964); *Isgett v. Seaboard Coast Line R.R.*, 332 F.Supp. 1127, 1139 (D.S.C. 1971). "THE FELA holds railroads to a prudent-person standard of care and a plaintiff who wishes to demonstrate that a railroad breached its duty must show circumstances that 'a reasonable person would foresee as creating a potential for harm.' " *Williams v. National Railroad Passenger Corporation*, 161 F.3d 1059, 1062 (7th Cir. 1998), *citing, Reardon v. Peoria & Pekin Union Ry. Co.*, 26 F.3d 52, 53 (7th Cir. 1994) and *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996).

The trial in the case at bar consisted of testimony from the plaintiff, Conductor Daniel Sevin, Jason D. Cohen, M.D., by video-taped deposition, and George Unis, M.D. The only exhibits submitted into evidence were the incident reports on the alleged incident (Plaintiff's Exhibit 1) and photographs (Defendant's Exhibit C). On the negligence issue, the plaintiff testified that on January 8, 2007, he was operating a train southbound from Poughkeepsie to the Croton Harmon Station on the Hudson Line. He was operating a train consisting of six Bombardier ("Bomb") cars, two of which were opened for passenger service. After he left the Garrison Station a passenger entered the engineer's cab and allegedly assaulted him. He claims that he was startled and felt pain in his lower back when he turned around to look at the passenger. He claims that the passenger was speaking in

3

another language and the only words he understood was "kill" "kill" "kill." The plaintiff testified that the door to the engineer's cab closes and latches but does not lock. He testified that it leads to the emergency exits.

Conductor Sevin testified that he observed the passenger that entered the engineer's cab. He described the passenger as being Hispanic, about five feet tall and fifty years old. He further described him as harmless during testimony and in a statement that is a part of the incident reports in Exhibit 1. Conductor Sevin testified that the door that leads to the engineer's cab cannot be locked because it is a fire hazard. The door to the engineer's cab leads to the emergency exits.

## A. IMPROPER COMMENTS BY PLAINTIFF OR HIS COUNSEL

The plaintiff's counsel mentioned during opening that there was other equipment that had different type doors to the engineer's cab that locked. This statement was impermissible and prejudicial and allowed the jury to speculate as to whether another type of door would have been reasonably safer. No evidence was offered nor could it have been offered on this issue. However, the plaintiff's counsel, during direct examination of the plaintiff, persisted in asking about alternative equipment and, although there were repeated sustained objections, this persistent questioning was prejudicial. The issue in this matter was not whether there was alternative equipment; rather, it was whether the equipment that he was provided with was reasonably safe. *Atlantic Coast Line R. Co. v. Graven*, 185 F.2d 176, 179 (4th Cir. 1950), *cert. denied*, 340 U.S. 952 (1951); *Atlantic Coast Line Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951), *cert. denied*, 342 U.S. 830 (1951); *McGivern v. Northern Pac. R. Co.*, 132 F.2d 213, 217 (8th Cir. 1942); *Baltimore & Ohio R. Co. v. Groeger*, 266 U.S. 521 (1925).

In addition, during closing argument, the plaintiff, without having offered any lay or expert opinion during trial, commented on changes that could have been made to the door on the "Bomb" car in question. Specifically, the plaintiff mentioned that there could be a motion sensor or a "do

4

not enter" sign posted on the door. The only evidence elicited at trial concerning signs on the door was with respect to the fact that this door was an emergency exit. Having a "do not enter" sign would defeat the purpose of placing an "emergency exit" sign. The "emergency exit" sign tells passengers where to go in the event of an emergency. The plaintiff's closing argument that a "do not enter" sign should have been placed on the same door as an "emergency exit" sign would only cause chaos in the event of an emergency. "The question the jury had to decide was whether the Railroad had exercised reasonable care for [Plaintiff's safety], not whether the Railroad could have employed a safer [alternative] method . . ." *Stillman v. Norfolk & W. R. Co.*, 811 F.2d 834, 838 (4th Cir. 1987); "The fact that there may have been a safer method than that employed, or that danger might have been avoided by action in a different manner, does not necessarily make an act negligent." *Chicago, Rock Island & Pacific Railroad Company v. Lint*, 217 F.2d 279; 282-83 (8th Cir. 1954).

The Court in see *In Re: Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993*, 188 F. Supp. 2d 1341 (S.D. Ala. 1999) specifically stated that "FELA claims, like common law negligence claims, must be supported by expert testimony where they involve issues (such as train speed and railcar design) beyond the common experience and understanding of the average jury." *In Re: Amtrak* at 188 F. Supp. 2d 1349.

In *Thirkill v. J.B. Hunt Transp.*, 950 F. Supp. 1105, 1107 (N.D. Ala. 1996), the Court cited to *Rice v. Cincinnati, New Orleans & Pac. Ry.*, 920 F. Supp. 732 (E.D. Ky. 1996) and stated that in "an FELA action brought by a railway employee, the court held that the plaintiff's fellow trainmen "[did] not have the qualifications to offer expert testimony that the engine cab design [was] unsafe." The plaintiff herein has not offered any proof, expert or otherwise, that the engineer's cab in the Bomb car he was operating was unsafe.

5

The plaintiff's argument on the issue of a different design of the engineer's door in the Bomb car was improper and led the jury to speculate on the issue of liability, notice and foreseeability. Although the standard of negligence for jury determination in a FELA case may be different than in other personal injury actions, the plaintiff must nevertheless prove these elements of common law negligence. *Thomas v. Conrail*, 971 F.Supp. 620 (D. Mass. 1997). See also, *Curley v. Consolidated Rail Corp.*, 178 A.D.2d 318; 578 N.Y.S.2d 536 (First Dept. 1991), *aff'd* 81 N.Y.2d 746, 593 N.Y.S.2d 772 (1992), *cert. denied*, 508 U.S. 940, 113 S.Ct. 2415 (1993). The jury must not be permitted to speculate and the case must be withdrawn from the jury's consideration unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer. *Curley, supra,* 578 N.Y.S.2d at 538-9, *quoting from A. T. & S.F. Ry. Co. v Toops*, 281 U.S. 351, 354-355 (1930). The Court determines whether the case should be given to the jury. *Curley, supra.*

The plaintiff also made efforts to evoke sympathy or to inflame or arouse the jury during the trial. The plaintiff chose to have the plaintiff draw a diagram of the train car he was operating despite having offered pictures into evidence that showed the specific car that the plaintiff was operating and the relevant parts of that car. The plaintiff, suffering from Kennedy's Disease, had a difficult time drawing the requested diagram because of severe hand shaking caused by the Kennedy's Disease. Since there were pictures in evidence, there was no need to draw the diagram and, Defendant submits, the sole reason the plaintiff was asked to draw the diagram was a calculated effort to evoke sympathy from the jury.

During closing arguments, the plaintiff gave an example of a job description "for life" that consisted of the injury the plaintiff allegedly suffered and the corresponding symptoms. Plaintiff further added, "how much would you want to be paid for that job?," or words to that effect,

6

suggesting an amount of $100 per hour. This was an improper attempt to have the jury identify with

the plaintiff. See, e.g., *Morrisey v. Welsh Co.*, 821 F.2d 1294 (8th Cir. 1987). The plaintiff attempted to

inflame or arouse the jury by arguing that it is because of "you [the jurors] that we safe planes, cars .

. ." *Id.*

## B. DEFENDANT'S MOTIONS FOR A DIRECTED VERDICT SHOULD HAVE BEEN GRANTED

### 1. The Plaintiff's FELA Claim Is Preempted By The FRSA

The defendant moved after the plaintiff rested and after all parties rested for a directed

verdict on the ground that Plaintiff's claim is insufficient to impose liability on the defendant

railroad herein due to the fact that Metro-North is not required under any of the Federal Regulations

which regulate the conduct of railroads nationally to lock the cab doors. Therefore, plaintiff's claim

under the FELA is pre-empted by the Federal Railroad Safety Act 49 U.S.C. 20101 ("FRSA").

In *Nickels v. Grand Trunk Western Railroad* 2007 U.S. Dist. LEXIS 88481 (copy annexed

herein) the Court relevantly stated:

> "To prevail on his FELA claim, Plaintiff must "prove the traditional
> common law elements of negligence: duty, breach, foreseeability, and causation."
> *Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990)* (quotation omitted).
> Defendants essentially argue that they owed Plaintiff no duty beyond complying with
> the FRSA, because the national interest in railroad safety standards should not give
> way to varying determinations, generally by juries, about the condition of railroad
> ballast in specific cases. The FRSA explicitly states the uniformity interest. "Laws,
> regulations, and orders related **[*5]** to railroad safety and laws, regulations, and
> orders related to railroad security shall be nationally uniform to the extent
> practicable." *49 U.S.C. § 20106.* The statute authorizes the Secretary of
> Transportation to prescribe such regulations and orders. *49 U.S.C. §§ 20101,
> 20103(a).*"

As in *Nickels*, supra, in this matter the plaintiff did not state in his complaint or through his testimony that the defendant failed to comply with any of the FRSA or of any other Federal Regulation which control the actions of the railroads.

Plaintiff herein is arguing that defendant failed to provide a lock to the subject cab door or failed to place any warnings on said door. These obligations go beyond those imposed by the FRSA. The Court in *Nickels*, supra, specifically stated that allowing the FELA to impose an additional duty beyond the requirements set forth by the FRSA would undermine the FRSA's **"express intent in national uniformity"**.

As in *Nickels*, supra, defendant herein "owed Plaintiff no duty beyond complying with the FRSA" or any other Federal requirements imposed upon Metro-North. (Also see *Crabbe v. Consolidated Rail Corporation et al.*, 2007 U.S. Dist. LEXIS 80895 copy annexed herein)

The only mention regarding the end doors of a train made in the Code of Federal Regulations is in *49 CFR 238.439* which relevantly states:

> "(f) A passenger compartment end door (other than a door providing access to the exterior of the trainset) shall be equipped with a kick-out panel, pop-out window, or other similar means of egress in the event the door will not open, or shall be so designed as to pose a negligible probability of becoming inoperable in the event of car body distortion following a collision or derailment."

Clearly this rule was meant to operate similarly to the Metro-North Operating Rules in that it was meant to ensure that, in cases of emergency, passengers could exit without problems. The relevant Metro-North rule regarding end doors states that "under no conditions will any doors be key locked at any time while train is occupied" (Rule 2007 C copy of which is annexed hereto).

Furthermore, the Code of Federal Regulations also states in *49CFR 229.119* that "(a) Cab seats shall be securely mounted and braced. Cab doors shall be equipped with a secure and operable latching device". This regulation also makes no mention of a locking device.

Both the Federal Rule and Metro-North's internal rules are meant to protect passengers in time of emergencies. Given that the plaintiff was operating the subject train form within the engineer's cab which is located beyond the end door in the type of train at issue herein, it was important that said door remain open and not locked. In reality Metro-North would have been liable, given the language of the Federal Rule if the said door was locked as plaintiff is suggesting. As such, no liability can be imposed upon Metro-North for allowing this door to remain unlocked.

Nor can plaintiff argue that further safety appliances were necessary since no such appliances are required under the Federal Regulations as stated in FRSA, the Boiler Inspection Act or any other applicable Federal Rules. Protective devices which are not required by the Boiler Inspection Act or any other applicable Federal Rules cannot be used to create a viable claim against a railroad company (see *Mosco v. Baltimore & O. Railroad*, 817 F2d 1088 (1987, CA4 Md), *cert. denied* 484 US 851 (1987) where engineer who was injured by a rock thrown through locomotive window did not have a viable claim since the Boiler Inspection Act did not require any of the protective devices which plaintiff claimed would have avoided his injury).

Citing to the *Mosco*, supra, case the Court in *McGinn v. Burlington N. R.R.,* 102 F.3d 295 (7th Cir. 1996) stated that even though the Boiler Inspection Act imposes certain duties upon railroads "this does not mean that the BIA demands that liability ensue in every case in which a plaintiff alleges that a carrier's failure to install some piece of equipment on a locomotive rendered the locomotive unsafe." *McGinn* at 102 F.3d 299.

9

Plaintiff's allegation that the locomotive end door had to be locked has no foundation in law or fact. In reality by locking the subject door the locomotive would be rendered more "unsafe" for the passengers traveling therein in case of an emergency. The door is clearly marked as an emergency exit and according to both Federal Rules and the rules governing the operation of Metro-North trains it must remain open.

The Court in *Oglesby v. Delaware & Hudson Ry.*, 180 F.3d 458 (2nd Cir. 1999), held that plaintiff's "failure to warn" claim was not viable and stated: "his contention -- even if accurate -- does not negate preemption by the BIA. *Napier* states in no uncertain terms that the relevant question is not whether the federal government has exercised its authority but whether it possesses the power in the first place.... No claim is made that the Secretary of Transportation could not issue a manufacturer-specific rule pursuant to the BIA. Indeed, the argument fails to recognize that the Department of Transportation has issued manufacturer-specific regulations in other contexts." (Citations omitted).

In effect the Court in *Oglesby*, supra, held that plaintiff could not sustain a claim for failure to warn since the Federal Regulations governing the safety of locomotive did not address such failure specifically. In other words, since it is within the power of the Federal Government to require that locomotives have certain warnings, a claim cannot be sustained under the FELA if no such requirement existed.

In *Sindoni v. Conrail*, 4 F. Supp. 2d 358 (M.D. Pa. 1996), the plaintiff claimed that Conrail should have equipped the engineer's cab with certain safety appliances in order to protect engineers in the event of a crash. The Court in *Sindoni*, supra, did not allow plaintiff to maintain his claim against Conrail and found that said defendant was not required to provide any safety devices which were not federally mandated. In *Sindoni*, supra, the plaintiff had attempted to claim that devices such

10

as a seat belt or air bag would have prevented his injury. The Court was clear in stating that no such devices were required under the Federal Regulations.

Similarly, in the matter at bar, plaintiff cannot maintain his claim because Metro-North was not required to provide a door to the engineer's cab which could be locked. Metro-North was also not required to provide any other safety device within the locomotive/cab the plaintiff was occupying at the time of the accident.

Importantly in *Lorincie v. SEPTA*, 34 F. Supp. 2d 929 (E.D. Pa. 1998) the Court cited to the principles outlined by the Supreme Court of the United States in *Napier v. Atlantic Coast Line R.R.*, 272 U.S. 605, 71 L. Ed. 432, 47 S. Ct. 207 (1926) and stated that:

> "The fact that the [administrative agency] has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the act delegating the power... Plaintiffs claim that because engineer's seats are not heavily regulated by the BIA, the Act does not preclude state common law claims regarding them. In *Napier*, however, the administrative agency had failed to issue any regulations regarding the relevant locomotive parts; the Court nevertheless found preemption. In this case, where the agency has issued a regulation (albeit a one-line regulation irrelevant to plaintiffs' claimed defects), state regulation would also be preempted. **The unregulated or thinly regulated status of a locomotive part does not render it immune to preemption** under *Napier*." (emphasis added).

Accordingly, plaintiff's claim that the he was not provided with sufficient protection is preempted by the FRSA. The only reference to the cab doors made in the Federal Regulations can be found (as cited above) in *49 CFR 229.119*, which section does not require any kind of locking mechanism.

Plaintiff herein cannot impose duties beyond those imposed by the FRSA or other Federal Regulations in order to sustain his FELA claim (see *In Re: Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993*, 188 F. Supp. 2d 1341 (S.D. Ala. 1999) where the Court stated that "the FRSA will supersede the FELA based on the policy embodied in the FRSA *to ensure*

11

*uniformity in law pertaining to railway safety.*" See also *Thirkill v. J.B. Hunt Transp.,* 950 F. Supp. 1105,

(N.D. Ala. 1996).

## 2. The Plaintiff Offered No Evidence
## That Engineer's Cab In The Bomb Car Was Unsafe

Defendant also moved for a directed verdict on the ground that the plaintiff did not offere

any proof that the engineer's cab was unsafe. Without expert testimony to support these allegations

plaintiff's claims must be dismissed as a matter of law. Defendant respectfully refers the Court to

Section A above where this matter is discussed in more detail when discussing the plainitff's

improper arguments on the alternative design where Defendant cites *In Re: Amtrak "Sunset Limited"*

*Train Crash in Bayou Canot, Alabama, on September 22, 1993,* 188 F. Supp. 2d 1341 (S.D. Ala. 1999) and

*Thirkill v. J.B. Hunt Transp.,* 950 F. Supp. 1105, 1107 (N.D. Ala. 1996).

## 3. Plaintiff Offered No Evidence Of Notice Or
## Foreseeability Of An Alleged Dangerous Condition

Defendant also moved for a directed verdict on the ground that the plaintiff failed to offer

any evidence of notice of an allegedly dangerous condition at the area of the alleged incident. The

plaintiff made no attempt whatsoever to show that the defendant had or should have had notice of a

dangerous condition at the area of the alleged incident. "[A] plaintiff's prima facie case under the

[FELA] must include all the same elements as are found in a common law negligence action." *Davis v.*

*Burlington Northern, Inc.,* 541 F.2d 182 (8th Cir. 1976), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 553 (1976);

*McGivern v. Northern Pacific Ry. Co.,* 132 F.2d 213, 217 (8th Cir. 1942).

One of the necessary elements of a common law negligence action is that the defendant must

have actual or constructive notice of the alleged condition. *Sears v. Southern Pacific Co.,* 313 F.2d 498 (9th

Cir. 1963); *Kaminski v. chicago River & Indiana Railroad Co.,* 200 F.2 1 (7th Cir. 1952); *Gordon v. American*

*Museum of Natural History,* 67 N.Y.2d 836, 501 N.Y.S.2d 646 (1986). The FELA defendant is not liable if

it had no reasonable way of knowing about the hazard that caused the employee's injury. *Peyton v. St. Louis Southwestern Ry.*, 962 F.2d 832 (8th Cir. 1992).

In *Hartel v. Long Island Railroad*, 476 F.2d 462 (2nd Cir. 1973), *cert. denied*, 414 U.S. 980, 94 S.Ct. 273, 38 L.Ed.2d 224 (1973), the plaintiff sought to recover damages from her husband's employer under the FELA after her husband was shot and killed at his place of employment. The Second Circuit affirmed a directed verdict by the Court Below in favor of the Long Island Railroad because the plaintiff failed "made no offer of evidence which would have shown that there was any unusual danger at the Mineola Station [where the plaintiff was fatally injured]." *Hartel* at 476 F.2d 465. This notice was essential to show the foreseeability of the dangerous condition. *Id.* See also, *Thomas v. Consolidated Rail Corporation*, 971 F. Supp. 620 (Dist. Of Mass. 1997) where summary judgment was granted in favor of the defendant because "prior incidents of sufficient seriousness to put a defendant on notice of a risk are required." *Thomas* at 971 F.Supp. 622. In *Gibbons v. CSX Transportation, Inc.*, 1193 U.S. App. LEXIS 31425 (1993) (copy was provided to the Court during the motion for a directed verdict and attached herewith), *aff'd* 12 F.3d 212 (6th Cir. 1993), the Court held that "[a]bsent evidence that the Corwin Road area was conducive to an unusual risk of assault, and that CSX had notice or knowledge of the likelihood of such attack, Plaintiff has failed to sustain his burden." *Gibbons* at [*8].

In *Okeke v. Long Island Railroad*, 2004 U.S. Dist. LEXIS 18676 (2004) (copy provided to the Court during the motion for a directed verdict and attached herewith), the Hon. Denise Cote granted summary judgment in favor of the defendant holding that "[t]he plaintiff had offered no evidence that the LIRR knew or should have known prior to [the date of the incident] that the Okeke was at risk of assault from passengers on the train running between Pennsylvania Station and Port Washington." *Okeke* at [*4]  In *Haas v. Delaware and Hudson Railway Company*, 2008 U.S. App. LEXIS 13417 (2nd Cir. 2008) (copy attached), the Second Circuit held that "FELA liability 'requires proof of actual or

constructive notice to the employer of the defective condition that caused the injury.'" *Haas* at [*12] quoting from, *Sinclair v. Long Island R.R.,* 985 F.2d 74, 77 (2nd Cir. 1993). The *Haas* Court went on to hold that "the vague evidence offered by Haas on this element is insufficient to reasonably justify a conclusion that D&H knew or should have known about a problem with the switch."

In the case at bar, the plaintiff has offered no evidence that Metro-North had any notice of a dangerous condition at the area where he was working at the time of the alleged incident. There is no evidence of any prior occurrences or complaints or of any defect with the equipment that he was provided with. There is no evidence that Metro-North could foresee the alleged occurrence. Thus, a directed verdict would be appropriate. The Court denied the defendant's motions for a directed verdict that was made after the close of the plaintiff's case but reserved decision on those motions when they were restated after the close of all the evidence. The verdict herein is against the weight of the evidence and the defendant respectfully requests that the Court grant its motion to set aside the verdict and grant judgment not withstanding the verdict in favor of the defendant Metro-North.

### III. STAY OF ENFORCEMENT OF THE JUDGMENT

Metro-North seeks a stay of the execution of the judgment in this matter pursuant to F.R.C.P. 62(b) pending the disposition of the within motion. In addition, Metro-North requests that the Court grant a stay of the execution of the judgment pursuant to F.R.C.P. 62(f) pending its appeal of the judgment on notice that the defendant will file in this matter. F.R.C.P. 62(f) states that "[i]n any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled . . . to such stay as would be accorded the judgment debtor had the action been maintained in the courts of that state." Metro-North, a subsidiary of the Metropolitan Transportation Authority, is a public benefit corporation. Public Authorities Law §§1260, *et. seq.* As a political subdivision of the State of New

14

York, Metro-North is entitled to a stay of all proceedings to enforce judgment pending appeal.

C.P.L.R. §5519 (a)(1).  *See also, Grant v. Metropolitan Transportation Authority,* 96 Misc. 2d. 683, 409

N.Y.S.2d 570 (Sup. Ct. N.Y. Cty. 1978) (Long Island Rail Road as subsidiary of MTA is a state

agency entitled to automatic stay).   Metro-North would be entitled to a stay if the plaintiff's action

had been brought in the New York State courts.  Thus, Metro-North respectfully requests that the

Court grant a stay on execution of the judgment pending the disposition of this motion and the

appeal of this case.

Dated:  New York, New York
      August 8, 2008

                                Respectfully submitted,

                                RICHARD K. BERNARD
                                General Counsel
                                Metro-North Commuter Railroad

                                By: _____

                                José R. Rios  (JRR-5785)
                                Attorneys for Defendant
                                Metro-North Commuter Railroad
                                347 Madison Avenue
                                New York, NY 10017
                                (212) 340-2537

*STATE OF NEW YORK*      :
                                    :ss:
*COUNTY OF NEW YORK :*

LAURA MATTHEWS, being duly sworn, deposes and says:

I am not a party to the action, am over 18 years of age and reside in the Bronx, New York.

On  August 8, 2008, I served a true copy of the annexed MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL AND ENFORCEMENT OF THE JUDGMENT, MEMORANDUM OF LAW IN SUPPORT OF MOTION and EXHIBITS thereto, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

Marc Wietzke, Esq.
Law Offices of Michael Flynn, PLLC
1205 Franklin Avenue
Garden City, New York 11530

LAURA MATTHEWS

Sworn to before me this
_8_ day of  August, 2008

NOTARY PUBLIC

MARILYN BARRETT
NOTARY PUBLIC - State of New York
No. 01BA6150300
Qualified in Queens County
Commission Expires July 24, 20 /0

Szaroleta,Daniel