UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANIEL SZAROLETA,

                Plaintiff,                              07 Civ. 7639 (KNF)

      -against-

METRO-NORTH COMMUTER RAILROAD,

                Defendant.
------------------------------------------------------------X

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION PURSUANT TO FRCP 50 TO SET ASIDE THE VERDICT, FRCP 59 FOR A NEW TRIAL AND FRCP 62 FOR A STAY OF ENFORCEMENT OF JUDGMENT**

---

                                      Law Offices of Michael Flynn, PC
                                      Attorney for Plaintiff
                                      1205 Franklin Avenue
                                      Garden City, New York 11530

Of Counsel and On the Brief:
    Marc T. Wietzke, Esq.

**PRELIMINARY STATEMENT**

This case has its genesis in the failure of Defendant Metro-North Commuter Railroad (hereinafter "Defendant" or "MNRR") to enforce its own safety rules and thereby provide Plaintiff Daniel Szaroleta (hereinafter "Plaintiff" or "Mr. Szaroleta") with a reasonably safe place to work. On July 25, 2008 the jury returned a verdict finding Defendant 100% liable for the back injury suffered by Mr. Szaroleta which required invasive surgery.

Before coming to its verdict, the jury heard that:

1. MNRR, by its own safety rules, prohibited anyone other than working crew members and a few select others from entering the cab area of the head car;

2. Conductor, Daniel Sevin, worked alone on the night in question, handling all revenue, ticket collection and safety functions for all passengers in two cars;

3. An additional conductor had been provided to assist Mr. Sevin on previous occasions but not on this occasion;

4. Mr. Sevin required at least 45 seconds to get to the cab area of the head car upon learning of the incident in question;

5. There were "no motion" sensors on five of the six sliding doors in the head car;

6. "No motion" sensors prevented the sliding doors in the head car from being opened while the train was in motion, but allowed them to be opened when the train came to a stop;

7. Defendant could have arranged the train to operate with a locomotive at the head end, thereby placing plaintiff in a separate car from the riding passengers;

8. Defendant chose to place the riding passengers in the same car with the plaintiff engineer;

9. There was no need for plaintiff engineer to go beyond the corner of the cab from which he operated the train to perform his functions;

1

10. There was no need for passengers to access the corner of the cab from which plaintiff operated the train, even in the case of an emergency;

11. The only barrier between plaintiff and the riding passengers was a sliding door operated with a push button that was identical to the sliding door at the other non-operating end of the head car;

12. The sliding door providing access from the passenger compartment into the cab did not even make mention of the plaintiff engineer being inside;

13. There was no sign in the passenger area of the head car that declared no access to the cab area except in case of emergency;

14. Plaintiff's supervisor, whose office is at Track 41, works behind a locked door that requires an employee pass to gain entrance;

15. Plaintiff's supervisor's administrative support staff, with offices located at Track 25, work behind a locked door that requires an employee pass to gain entrance;

16. Defendant's medical department, located on the 22nd Floor of the Graybar Building in mid-town Manhattan, requires an employee pass to gain entrance;

17. A passenger, seated a few seats from the cab area in the head car, entered the dark cab from the passenger compartment at approximately 10:30 p.m. on January 8, 2007 while plaintiff was accelerating from 50 mph in 80 mph territory and pressed up against plaintiff speaking in a foreign language, the only understandable parts being "Kill, Kill, Kill".

Consequently, Plaintiff respectfully requests that this Court deny Defendant's motion to set aside the verdict and alternatively, for a new trial, in its entirety since as may be seen from the foregoing, there was more than enough evidence for a jury to find Defendant negligent in failing to protect plaintiff, and at the same time enforce its own safety rules. Plaintiff also opposes the request for a stay of enforcement of the judgment.

**LEGAL ARGUMENT**

**POINT I**

**THE VERDICT SHOULD NOT BE SET ASIDE**

Defendant has moved to set aside the verdict pursuant to Federal Rule of Civil Procedure 50(b) or alternatively for a new trial pursuant to Fed.R.Civ.Pro. 59. To succeed on its Rule 50 motion, the MNRR must show that, "there [was] no legally sufficient evidentiary basis for a reasonable jury" to resolve the issue in favor of Mr. Szaroleta. Cross v. New York City Transit Authority, 417 F.3d 241 (2d Cir. 2005), *citing* Fed. R. Civ. P. 50(a)(1). In reviewing defendant's Rule 50 motion, this Court may consider all the record evidence, but in doing so it "must draw all reasonable inferences in favor of [Mr. Szaroleta], and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); *see also* Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002); Samuels v. Air Transp. Local 504, 992 F.2d 12, 14 (2d Cir. 1993); Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992). *See also* Jarvis v. Ford Motor Co., 283 F.3d 33 (2d Cir. 2002) ("In ruling on a Rule 50 motion, 'the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.'" *citing* Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001) (internal citations omitted).

As noted above, the jury was offered multiple alternative and complementary avenues to find MNRR liable. These include: A) Insufficient manpower, i.e. the failure to provide an Assistant Conductor to enforce company rules to keep non-crew members from entering the cab; B) A separate door inside the cab and separate from the existing sliding door which would not

3

inhibit egress in the event of an emergency; C) Signs mounted inside the passenger compartment warning against entry into the cab except in the event of emergency in light of the engineer's presence therein; D) use of a "no-motion sensor" on the sliding door between the passenger compartment and the cab, identical to the device on the other five (5) sliding doors of the car, to prohibit unwarranted access to the engineer while the train was in motion, again also allowing access to the emergency exit when the train stops.

In its motion Defendant correctly notes that it is not required to anticipate every possible accident. However, it is required to provide Mr. Szaroleta a reasonably safe place to work, a duty which it has breached "if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees." Accordingly, "an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law." Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 58 (2d Cir. 1996)

In Ulfik, the plaintiff was another employee of MNRR. While working at Grand Central Station, Ulfik fell down a flight of stairs as a result of dizziness allegedly caused by his having inhaled paint and solvent fumes in the railroad tunnels a few days earlier. He brought an action for negligence under FELA. In reversing the district court's grant of judgment as a matter of law in favor of the defendant at the close of the plaintiff's case-in-chief, the Second Circuit Court of Appeals concluded that "the trier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness."

In another case, Tufariello v. Long Island Rail Road Co., 458 F.3d 80 (2d Cir. 07/20/2006), against this defendant's sister railroad, the Court found that a reasonable factfinder could find that the LIRR breached its duty to ensure that its workers were protected from extremely loud noises, irrespective of LIRR's compliance with the relevant OSHA regulations

and premised on the plaintiff's own testimony that his exposure to loud noises caused him physical pain.

As a further demonstration of how little is required to substantiate a jury finding, in Gallick v. Baltimore & O.R.R., 372 U.S. 108, (1963) the railroad had permitted a fetid pool of water to exist on its grounds. The pool of water attracted a variety of vermin and insects. An employee bitten by an insect in the vicinity of this pool suffered a reaction so severe as to require the amputation of his leg. Foreseeability was in issue because there was no evidence that the insect that stung this employee was hatched from the stagnant pool or was attracted there by it, and because the medical consequence was highly unusual. The trial court awarded damages, but the state appeals court reversed, finding an insufficient causal connection to permit a jury verdict. The Supreme Court reversed and remanded, holding that the jury verdict was sustainable. Since the railroad "knew that the accumulation of the pool of water would attract bugs and vermin to the area--it is clear that the jury concluded that respondent should have realized the increased likelihood of an insect's biting petitioner while he was working in the vicinity of the pool." Gallick, 372 U.S. at 118-119. The plaintiff in Gallick was therefore not required to demonstrate specifically that the agent of harm issued from the untended condition on the railroad's property, or that the untended condition could be expected to result in so terrible a harm.

In the case at bar, as this Court noted on MNRR's motion to dismiss at the close of plaintiff's case, the defendant created the very scenario that enabled the incident to occur. That is, MNRR placed its riding public in the same car as the engineer. Plaintiff testified that this was necessitated by MNRR's decision to operate the train in question with the diesel locomotive at the rear of the train in a pushing configuration, as opposed to placing the locomotive at the head end, which would have meant that Mr. Szaroleta would have been isolated from the riding public. MNRR's own safety rules prohibit any person other than the working crew and a few

5

select others to be in the cab. In the case at bar, it is undisputed that MNRR failed to enforce that rule.

Plaintiff also testified to the several other areas on MNRR property ostensibly available to public entry that were fortified to prevent unauthorized access. More specifically, plaintiff testified that his supervisor's office, his supervisor's clerical staff and indeed defendant's medical department was all behind locked doors that required approval to gain entrance. Both fact witnesses also confirmed that there was not a single sign in the passenger compartment advising passengers to stay out of the cab except in case of emergency or even that the engineer was inside operating the train. MNRR is ignoring the obvious – it restricts access to several less safety-sensitive areas of its property on a regular basis and for obvious reasons. In this day and age of locked airplane cockpits, physical barriers in taxi cabs, even careful searches at courthouses, it is only common sense to isolate and protect the engineer of a train operating at 80 miles per hour carrying masses of the riding public.

On a related note, MNRR argues that expert testimony was required to justify a liability finding, morphing this case into a discussion of a need for expert testimony on railcar design. However, as noted above, common sense dictates that the likelihood of a passenger entering the cab is not just foreseeable, but increased, where the defendant chooses to combine the cab and passenger compartment into one car. Defendant's argument on this point is two fold. On one hand defendant argues that the Federal Railroad Safety Act "preempts" plaintiff's Federal Employer's Liability Act claim. In the event that this argument fails, MNRR argues that an expert is needed regardless, to make out a claim of negligence.

The preemption argument has been attempted before, and the Second Circuit Court of Appeals in Tufariello, *supra*, dismissed the argument for the basic reason that the preemption doctrine flows from the Constitution's Supremacy Clause, U.S. Const., Art. VI, cl. 2, which "invalidates state laws that interfere with, or are contrary to, federal law." Sprint Spectrum L.P.

6

v. Mills, 283 F.3d 404, 414-15 (2d Cir. 2002) (internal quotation marks and citation omitted). Consequently, the doctrine is inapplicable to a potential conflict between two federal statutes.

As a technical matter, Defendant's reliance on Nickels v. Grand Trunk Western Railroad and Crabbe v. Consolidated Rail Corp et al. is misplaced and must be ignored because the cases, unpublished as they are, were not attached to the pending motion, despite defendant's statements to the contrary. On a substantive note, even considered as an argument for preclusion, which at least can apply vis-à-vis two potentially competing federal statutes, defendant's argument fails. As the Second Circuit noted in Tufariello, the mere fact that the FRSA addressed train horn volumes did not preclude a claim under the FELA based on the failure to equip its employee with hearing protection. Here too, the sole requirement of a secure and operable latch on the cab door does not preclude any of the alternative (more) reasonable means of providing plaintiff with a safe place to work. In fact, the Court in Tufariello specifically addressed reliance on compliance with federal regulations as a complete defense:

> The fact that the LIRR's Hearing Conservation Program complied with OSHA regulations regarding hearing protection therefore does not conclusively demonstrate that the LIRR was free from negligence. *See* Restatement 2d of Torts § 288C (1965) ("Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions."); *see also* Robertson v. Burlington N. R.R., 32 F.3d 408, 410 (9th Cir. 1994) (holding that a violation of OSHA standards did not constitute negligence per se but that such standards were admissible as "some evidence of the applicable standard of care"); *cf.* Charter Oak Fire Ins. Co. v. Nat'l Wholesale Liquidators, 279 F. Supp. 2d 358, 361 n.3 (S.D.N.Y. 2003) (in a negligence action under New Jersey law where the plaintiff alleged that inadequate sprinklers failed to contain a fire, noting that "although the sprinklers were code [compliant], such compliance does not, of itself, establish due care as a matter of law").

Consequently, defendant's attempt to hide behind the FRSA must fail. MNRR designed, purchased and placed into service a cab car that did not provide a reasonably safe place to work. On all of MNRR's other cab cars, a door separate and apart from the sliding door was installed.

7

This is conclusive proof of what MNRR considers to be reasonably safe equipment, since it presumably would not provide modifications that are without purpose.

On evidence much thinner than the case at bar, the Second Circuit Court of Appeals has recognized the validity of an FELA claim. In <u>Ulfik</u> it was paint fumes. In <u>Tufariello</u> it was loud noises causing hearing loss. And in <u>Gallick</u> it was a random insect bite. Here, as in all of the foregoing examples, "the right of the jury to decide the issue of causation must be most liberally viewed." <u>Marchica v. Long Island R.R. Co.</u>, 31 F.3d 1197, 1207 (2d Cir. 1994) (internal quotation marks and citation omitted).

## POINT II

### DEFENDANT IS NOT ENTITLED TO A NEW TRIAL

Federal Rule of Civil Procedure 59(a) provides in relevant part,

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

One such reason is when, in the opinion of the Court, "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." <u>Nimely v. City of New York</u>, 414 F.3d 381 (2d Cir. 2005); <u>Munafo v. Metropolitan Transportation Authority</u>, 381 F.3d 99, 105 (2d Cir. 2004) (internal quotation marks omitted); *see also* <u>Manley v. Ambase Corp.</u>, 337 F.3d 237, 244-45 (2d Cir. 2003); <u>Song v. Ives Laboratories, Inc.</u>, 957 F.2d 1041 (2d Cir. 1992) *citing* <u>Smith v. Lightning Bolt Productions, Inc.</u>, 861 F.2d 363, 370 (2d Cir. 1988). *See also* <u>Newmont Mines Ltd. v. Hanover Ins. Co.</u>, 784 F.2d 127 (2d Cir. 1986); <u>Mallis v. Bankers Trust Co.</u>, 717 F.2d 683 (2d Cir. 1983); <u>Bevevino v. Saydjari</u>, 574 F.2d 676 (2d Cir. 1978.)

The verdict reached by the jury is not a miscarriage of justice. The record is replete with examples of the unreasonably safe place to work specifically created by defendant through its choices of equipment, train make-up and staffing. The record is equally filled with opportunities

8

of reasonable safer alternatives. In light of this, it can hardly be said that the jury was impassioned or otherwise became carried away such that there was any miscarriage of justice.

**A. The Verdict is Not Against the Weight of the Evidence**

As noted above in greater detail, there was sufficient evidence in the record to substantiate the jury's finding. With multiple alternative self-supporting theories for liability, and the absolute absence of any claim of comparative negligence, defendant's assertion is wholly without merit.

**B. There Were No Improper Statements**

MNRR, for the first time in this motion, goes so far as to argue that plaintiff's counsel engaged in underhanded trial practices in an effort to garner an unfair advantage and improperly inflame the jury. Defendant's claims include supposed improper remark's during opening statement and during summation (not objected to during trial), use of plaintiff to explain and diagram the car he was operating at the time of the incident and asking questions after objections to prior questions were sustained.

On these claims, MNRR is entitled to a new trial only if it can prove that plaintiff's counsel's conduct caused prejudice to MNRR by appealing to a jury's possible biases, thereby unfairly influencing its verdict. *See* Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin, 283 U.S. 520, 521 (1931) (setting aside a verdict based on appeals to passion and prejudice); *see also* Pappas v. Middle Earth Condominium Ass'n, 963 F.2d 534, 540 (2d Cir. 1992). Further, where as in this case, MNRR failed to object at trial to the statements, a reviewing court may reverse only for plain error because that failure deprived the trial court of an opportunity to deal with those remarks then and there. Greenway v. Buffalo Hilton Hotel, 143 F.3d 47 (2d Cir. 1998) *citing* Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 17-18 (2d Cir. 1996) ("Only where an unpreserved 'error [is] so serious and flagrant that it goes to the very integrity of the trial' will a new civil trial be warranted.") (alteration in original).

9

Here, as in Greenway, *supra*, the comments made by plaintiff's counsel in this case do not rise to the level of a reversible error, let alone plain error. Federal courts have recognized unfair prejudice and ordered new trials where attorneys have unfairly influenced the jury by attempting to exploit its regional bias, *see, e.g.,* Pappas, 963 F.2d at 540-41 (faulting counsel for singling out plaintiff due to his out-of-state status), or by injecting irrelevant allegations about the opposing party into the case, *see, e.g.,* Alejo Jimenez v. Heyliger, 792 F. Supp. 910, 919-20 (D. P.R. 1992) (setting aside verdict in a medical malpractice suit due in part to defense counsel's statement that plaintiff was a "precocious and promiscuous young woman").  In Greenway, the Court found no plain error despite the fact that the complained of conduct included gay-bashing to illustrate the point of the evils of discrimination -- where the jury likely assumed that the plaintiff was a homosexual.  In coming to its conclusion, the Greenway Court noted the Judge's instruction that statements made by the lawyers were not to be considered as evidence. In the case at bar, the complained of comments were apparently not too offensive, in that defense counsel did not even object to them during plaintiff counsel's opening or summation, and the following language from the final jury charge certainly cured any potential confusion: "Arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyer's statement, it is your recollection which controls."

As to MNRR's ill-informed claim that Mr. Szaroleta was asked to create a diagram of the car in question in an effort to inflame the jury, the Greenway decision is also instructional.  Here, as in Greenway, the defendant itself tried to inject Mr. Szaroleta's condition into the record.  One of the major tenet's of defendant's case was Mr. Szaroleta's Kennedy's disease.  In fact, defense counsel spent considerable time with plaintiff, Dr. Cohen, Dr. Unis and in summation addressing the effect of Kennedy's Disease on plaintiff's claims.  If nothing else, like in Greenway, the dual

references to Kennedy's Disease cancelled each other out, and it is therefore appropriate to deny MNRR's motion for a new trial on the basis of closing argument statements. It should also be noted, that the argument relating to the diagram is specious insofar as the photographs in evidence did not show the layout of the car in its entirety, focusing instead only on the cab. Additionally, plaintiff has a right to present evidence in his case in the manner he sees fit, particularly where it is evidence not otherwise available to the jury.

Turning lastly to MNRR's claim that plaintiff counsel's "persistent questioning was prejudicial", any potential prejudice was remedied by the Court's initial charge, wherein the jury was advised that the questions of counsel are not evidence, as well as the following from the final jury charge: "The question of a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions." Repeated, albeit unsuccessful, attempts to elicit evidence relating to MNRR's other safer more reasonable alternative equipment is not a basis for a new trial.

## POINT III

### DEFENDANT IS NOT ENTITLED TO A STAY OF ENFORCEMENT

Defendant has shown absolutely no justification for its application for a stay of enforcement of the judgment under Fed.R.Civ.Pro. 62(b). That Rule provides that, "on appropriate terms for the opposing party's security, the court may stay the execution of a judgment — or any proceedings to enforce it — pending disposition of any of the following motions," said motions including those pursuant to Rule 50 or 59. Other than a one sentence request, MNRR has not bothered to justify its demand or provide the required security.

As to MNRR's request pursuant to Fed.R.Civ.Pro. 62(f) and through it Civil Practice Law and Rules §5519(a)(1), it is premature. Defendant has not filed a notice of appeal, consequently the provisions of CPLR 5519 have no effect and defendant is not entitled to a stay at this time.

## **CONCLUSION**

As set forth in detail above, the jury's finding of negligence against MNRR is wholly supported by the evidence. For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny defendant's motion in all respects.

Dated: August 18, 2008

                                        Respectfully submitted,

                                        Law Offices of Michael Flynn, PC

                                        By: _____
                                                MARC WIETZKE