UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DANIEL SZAROLETA,                                :

                        Plaintiff,       :

     -against-                                      :

METRO-NORTH COMMUTER RAILROAD, :

                      Defendant.     :
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

07 Civ. 7639 (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

Before the Court is the defendant's post-trial motion to set aside the jury's verdict and enter judgment in favor of the defendant, pursuant to Federal Rule of Civil Procedure 50(b), on the ground that the plaintiff failed to prove the defendant was negligent. Alternatively, the defendant moves for an order, pursuant to Federal Rule of Civil Procedure 59, for a new trial because the verdict: (1) was against the weight of the evidence; and (2) was tainted by improper statements and evidence proffered by the plaintiff. In addition, the defendant moves, pursuant to Federal Rule of Civil Procedure 62(b) and (f), for a stay of the enforcement of the judgment, and notes that it "will file" a notice of appeal. The plaintiff opposes the defendant's motion.

The defendant's motion is analyzed below.

## II. BACKGROUND

Plaintiff Daniel Szaroleta ("Szaroleta"), commenced this action against Metro-North Commuter Railroad ("MNCR"), under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, et seq., based on injuries he sustained while working as an engineer for MNCR in

January 2007. Szaroleta alleged that MNCR was negligent, in that it failed to provide him a reasonably safe work environment. Specifically, Szaroleta asserted that MNCR failed to provide reasonable protections against unauthorized persons entering the engineer's cab, where he was assigned to work and, that, on the date in question, a passenger entered the engineer's cab and caused Szaroleta to injure his back.

Trial Proceedings

Testimony at trial established that, on January 8, 2007, Szaroleta was operating a train in which two–out of six–Bombardier[1] ("Bomb") cars carried passengers, and that he performed his job out of one of the passenger-carrying cars. Aside from Szaroleta, the only other MNCR employee on the train was a conductor; no assistant conductor had been assigned to the train. Szaroleta explained that, as the train's engineer, he was supposed to have "no interaction" with the "riding commuters and passengers," because he was "not supposed to have any distractions whatsoever because of the danger of a train colliding with another train." The engineer's cab could be accessed by pressing a button on a door that caused the motorized, sliding door to open. Affixed to the door were signs including one stating, "press here," with an arrow indicating the button that must be pressed to open the door, and an emergency exit sign. No warning signs were posted on the door advising passengers not to enter the engineer's cab while it is occupied by the engineer.

At approximately 10:15 p.m., on January 8, 2007, Szaroleta was operating an accelerating train, the train's conductor was assisting passengers in another railcar, and a passenger entered the engineer's cab. When Szaroleta turned his body to face the passenger, he "felt something pop

---

[1] Bombardier is a railcar manufacturer.

in [his] back." Following this incident, Szaroleta experienced back pain that worsened over time, and, after a magnetic resonance imaging ("MRI") was performed, Szaroletta learned that "a partial disk [] was pressing against [a] nerve [in his back]," which required surgery. Szaroleta had successful back surgery. However, he continued to feel pain in his back after the surgery was performed, and, at the time of trial, he felt "discomfort" in his back.

At trial, prior to opening statements, the jury was instructed that, <u>inter alia</u>, the "statements made by parties [at] the opening of the trial and at the close of the trial . . . are not evidence in the case." During the plaintiff's opening statement, the plaintiff's attorney commented:

> Th[e] [Bomb car] is the only piece of equipment on the Metro-North property–you will hear terms like M1, M2, M3, M4, M6, M7. Those are all different types of trains. Every single one of those provides for the engineer to lock a door from inside o[f] the cab. . . . The Bom[b] cars, those are set up a little different. Those have just a single sliding door. The evidence will show that the reason that's left not to be locked is so the passengers in the event of an emergency can get to the corner doors to get out.

No objection was made to this portion of the plaintiff's opening statement.

In relevant part, during direct examination, Szaroleta was asked to "draw just a sketch of the Bombardier car that [he] . . . operat[ed] on January 8, 2007," to which no objection was made. Szaroleta was asked how the door between the "operating cab" and the "passenger compartment" was "secured," and Szaroleta responded that there was "some type of latch that keeps the door from rolling back and forth." Szaroleta was asked whether it was "possible to lock a door between you and the passengers" on "other equipment," MNCR objected to this question, and the objection was sustained. Later, during direct examination, the following testimony was elicited:

3

> Q: Mr. Szaroleta, is there any other equipment used by Metro-North for which you're qualified where this accident could have happened?
> Mr. Rios: Objection: Relevance.
> The Court: Sustained.
> Q: Were you able to lock passengers out of your operating compartment on the Bom[b] car that you were operating on January 8, 2007?
> A: No, I couldn't.
> Q: Are you able to do that on any of the other equipment that you are qualified to operate for Metro-North?
> Mr. Rios: Objection: Relevance.
> The Court: Just a moment. I'll sustain the objection on relevance grounds, but I think you can elicit the information if you rephrase the question.
> Q: How was the passenger able to get to you on the Bom[b] car?
> A: He pushes a button, a door slides open, and they walk in.
> Q: Does the M equipment have a sliding door similar to the Bom[b] car?
> A: No, it doesn't.

Subsequently, Szaroleta was asked whether "the railroad provide[s] you with a lock between your operating cab and the general riding public on any equipment that it owns and requires you to operate," to which a sustained objection was made.

On cross-examination, Szaroleta was questioned regarding, <u>inter alia</u>, Kennedy's Disease, a condition from which Szaroleta experienced various symptoms. Specifically, MNCR elicited testimony that, in 2006, Szaroleta experienced "widespread twitching as well as tremors [in his] upper extremities," "some muscle cramps," exhaustion, and weakness in his knees, with the latter symptom possibly being attributed to knee surgeries that had been performed on Szaroleta.

At the close of the plaintiff's case, MNCR moved for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(a)(1), arguing that: (1) the plaintiff failed to establish that MNCR was negligent by providing defective or improperly designed equipment; (2) the plaintiff was required to submit expert testimony on the issue of whether the equipment used was defective; (3) the plaintiff failed to establish that MNCR had notice, or could have reasonably foreseen, that

4

a dangerous condition existed at the time of the incident; and (4) the plaintiff's FELA claim, regarding whether a lock should have been installed on the door leading to the engineer's cab, was preempted by the Federal Railroad Safety Act ("FRSA"). After hearing from the parties, in support of and in opposition to the motion, the Court denied the motion. Subsequently, the defense rested, having called one witness to give opinion testimony on the plaintiff's medical condition, and renewed its motion for judgment as a matter of law. See Fed. R. Civ. P. 50(a)(2). The Court reserved decision on that application.

During closing arguments, counsel to MNCR stated to the jury, in relevant part, that:

> one unfortunate thing is the plaintiff does have the Kennedy's [D]isease condition, and I don't blame you if you sympathize with the plaintiff in that regard. I submit to you that sympathy should not play a role in your determination in this case as to whether the plaintiff should recover from the defendant. I'm sure it is not a pleasant thing to have to hear from two doctors how this progressive condition can eventually lead to a total disability, but he has that condition.

Later in his summation, counsel to MNCR argued that the jury would have to consider to what extent Szaroleta's Kennedy Disease condition had any effect on the back pain of which Szaroleta complained. Counsel to MNCR noted specifically that Kennedy's Disease is "a progressive disease" that "can cause weakness."

During the plaintiff's closing argument, the plaintiff's attorney noted that, to provide Szaroleta with "a reasonably safe place to work," MNCR "could have had somebody [guarding the door to the operating cab]," or "had a notice on the door that said don't come in." No objection was made to this statement. Additionally, the plaintiff's attorney requested that the jury "give to Mr. Szaroleta a monetary equivalent of his health back," and that he was asking that the jury "put a dollar figure" on "the condition that Mr. Szaroleta is in [to equate to the price

5

jurors would] pay somebody to live like Mr. Szaroleta is living." Counsel continued:

> [T]he classified ad for Mr. Szaroleta would look something like this: Wanted, 51-year-old man with constant back pain, will have pain on standing, will have pain on sitting for prolonged periods, will be in discomfort every day, all day, will be having difficulties climbing, will have difficulties kneeling, will be unable to lift more than 25 pounds, and the catch, though, is that once you take the job, you can never quit. Would you pay him $100 an hour?

Before the jury retired to deliberate, it was instructed, by the Court, to "find the facts in this case, but [to] accept the law as [the Court] state[s] it . . . and apply that law to the facts as you find them." In addition, the jury was instructed:

> [t]he question of a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question. . . .
>
> * * *
>
> Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. . . .
>
> * * *
>
> Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyer's statement, it is your recollection which controls.

The jury was also instructed on the calculation of compensatory damages.

### III. DISCUSSION

I. <u>Fed. R. Civ. P. 50(b) Motion</u>

Fed. R. Civ. P. 50(b) provides as follows:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> > (2) order a new trial; or
> > (3) direct the entry of judgment as a matter of law.

In the case at bar, the defendant moved timely under Fed. R. Civ. P. 50(b).[2]

"Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998). "In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury." Williams v. County of Westchester, 171 F.3d 98, 101 (2d Cir. 1999). Accordingly, a court should grant an application for judgment as a matter of law only in those circumstances where "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence

---

[2] Judgment was entered on Tuesday, July 29, 2008, and MNCR filed its Rule 50(b) motion on Monday, August 11, 2008. Federal Rule of Civil Procedure 6(a)(2) provides that, "in computing any time period specified in these rules. . . . [e]xclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days." Two intervening weekends fell between July 29 and August 11, 2008, and, therefore, MNCR's motion was filed timely on the ninth day of the ten-day period provided.

in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." Cruz v. Local Union No. 3 of the Int'l Broth. of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994)(citations omitted).

>FELA provides, in its most pertinent part, that:
>
>Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, . . . machinery, . . . or other equipment.
>
>45 U.S.C. § 51.

"[A] relaxed standard of negligence applies in FELA cases in this Circuit," such that "an employer is liable for injuries caused 'in whole or in part' by the employer's negligence." Williams v. Long Island R.R. Co., 196 F.3d 402, 406 (2d Cir. 1999). "Accordingly, . . . an employer breaches its duty under FELA 'if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees.'" Id. (internal quotations and citations omitted). Under this standard, the plaintiff need only show that "employer negligence played any part, even the slightest, in producing the injury." Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 58 (2d Cir. 1996) (internal quotations and citations omitted). "Therefore, [o]nly in instances where reasonable jurors could reach only one conclusion may the court take the determination from the jury and decide the question as a matter of law." Williams, 196 F.3d at 407 (internal quotations and citations omitted).

MNCR moves for judgment as a matter of law on the basis that the plaintiff failed to establish that MNCR was negligent in relation to its duty to provide him a safe work

8

environment. Specifically, MNCR argues that: (1) the plaintiff's FELA claim is preempted by FRSA; and (2) the plaintiff failed to prove that MNCR was negligent, since there was "no evidence" supporting a finding that the engineer's cab was unsafe or that MNCR had notice of–or could reasonably foresee that–a dangerous condition existed, and expert testimony was required on the issue of whether the cab had an unsafe design.

Preemption

"[T]he preemption doctrine flows from the Constitution's Supremacy Clause, U.S. Const., Art. VI, cl. 2, which 'invalidates state laws that interfere with, or are contrary to, federal law,'" and, as such, "[t]he doctrine is inapplicable to a potential conflict between two federal statutes." Tufariello v. Long Island R.R. Co., 458 F.3d 80, 86 (2d Cir. 2006). MNCR contends, in its motion, that Szaroleta's FELA claim is preempted by FRSA. However, because both Acts are federal statutes, FELA cannot be preempted by FRSA. See id.

Expert Testimony and Foreseeability

"It is well settled that expert testimony is unnecessary in cases where jurors are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training." Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (internal quotations and citations omitted). However, "where an injury has multiple potential etiologies, expert testimony is necessary to establish causation, even in view of plaintiff's reduced burden to prove causation." Id. (citing Claar v. Burlington N. R.R. Co., 29 F.3d 499, 503-04 [9th Cir. 1994]) (analyzing a FELA claim). The Second Circuit Court of Appeals has found that a plaintiff, who had fallen after experiencing dizziness that he attributed to paint fumes inhaled at his workspace, was under no obligation to present expert medical

9

testimony to prove the toxicity of the paint, but, rather, the plaintiff "need . . . only [prove] that [the defendant] could have reasonably foreseen that the paint would increase the likelihood of injury, and that [the defendant] failed to take reasonable precautions." Ulfik, 77 F.3d at 58. Similarly, in Tufariello, the plaintiff argued that the defendant railroad failed to provide him with "hearing protection" to spare him from ear pain and hearing loss attributed to the "loudness and shrillness" of "warning horns" that were installed on some locomotives. Tufariello, 458 F.3d at 83. The Second Circuit found Tufariello analogous to Ulfik, holding that, "there is a generally understood causal connection between physical phenomena–in this case, very loud sounds . . .–and the alleged injury that 'would be obvious to laymen,'" and, thus, "Tufariello's claim–like Ulfik's–may be decided by a factfinder even in the absence of expert testimony." Tufariello at 88.

In the present case, consideration of whether a lock, sign or additional railroad personnel would prevent or deter unauthorized persons from entering the engineer's cab is "generally understood" and does not require expert testimony. See id. at 89 ("[t]he causal link . . . between hearing loss and repeated exposure to noise so loud that it causes physical pain or ear-ringing is . . . widely known and . . . not the subject of scientific dispute").

By extension, with regard to MNCR's argument that it is entitled to judgment as a matter of law because insufficient evidence was in the trial record to show that MNCR had notice that the engineer's cab, into which passengers could enter while the train was in operation, was unsafe, the Second Circuit has found that a plaintiff "need . . . only [prove] that [the defendant] could have reasonably foreseen that the [lack of a lock or signage on the engineer's cab door or the absence of a conductor from a passenger railcar] would increase the likelihood of injury [to

10

the train's engineer while he or she was operating the train], and that [the defendant] failed to take reasonable precautions." Ulfik, 77 F.3d at 58. In the present case, the record shows that, on the night of Szaroleta's injury, a single train car carried passengers and housed the engineer's cab, no lock was on the door to the engineer's cab, and no signage was on the door indicating that the door led to the engineer's cab and only authorized personnel were allowed to enter while the engineer was present in the cab operating the train. These facts provide a sufficient basis for a jury to find that MNCR could foresee and/or reasonably expect that a passenger could enter the engineer's cab, while it was occupied by an engineer operating the train.

In addition, MNCR's decision to assign a lone conductor to manage the two railcars in passenger service on the train Szaroleta operated on January 8, 2007, provided a sufficient basis for the jury to conclude that MNCR could have foreseen, or reasonably expected, that a passenger could enter the engineer's cab, while the train was being operated, without being stopped by an MNCR employee.

II.     Fed. R. Civ. P. 59 Motion

Fed. R. Civ. P. 59 provides, in pertinent part, that: "[t]he court may, on motion, grant a new trial on all or some of the issues–and to any party–as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . ." Fed. R. Civ. P. 59(a)(1)(A). The determination to grant or deny a motion for a new trial, on the ground that the jury's verdict was against the weight of the evidence, is left to the discretion of the trial judge. See Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992). However, "[a]s a general matter, '[a] motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage

of justice.'" DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998)(quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 [2d Cir. 1992]).

MNCR contends it is entitled to Rule 59 relief because the verdict was based upon improper statements and evidence proffered by the plaintiff, and the verdict was against the weight of the evidence. Each ground is considered below, in turn.

Improper Statements

Ordinarily, the "failure to object to an issue during trial precludes review of that issue on a motion for a new trial," unless the mistake constitutes plain error. Hardy v. Saliva Diagnostic Systems, Inc., 52 F. Supp. 2d 333, 340 (D. Conn. 1999)(citing Schaafsma v. Morin Vermont Corp., 802 F.2d 629, 636 [2d Cir. 1986]). "An error is plain 'if it results in a miscarriage of justice, or if it is an obvious instance of misapplied law.'" Latsis v. Chandris, Inc., 20 F.3d 45, 49-50 (2d Cir. 1994)(quoting Abou-Khadra v. Mahshie, 4 F.3d 1071, 1078 [2d Cir. 1993]). A failure to object will be disregarded where there is "plain error affecting substantial rights that goes to the very essence of the case, or where the party's position has previously been made clear to the trial court and it was apparent that further efforts to object would be unavailing." Anderson v. Branen, 17 F.3d 552, 556-57 (2d Cir. 1994).

In this case, MNCR made no objections to the remarks made by Szaroleta's attorney during opening and closing statements. The unchallenged comments made by Szaroleta's attorney–that the engineer's cab door on other equipment used by MNCR had locks, that changes to enhance the engineer's safety could have been made to the door of the engineer's cab on the Bomb car, and that the jury should determine appropriate compensation based on a "job description" that incorporated a recitation of the back pain endured by Szaroleta–cannot be

12

found to amount to "plain error." Here, the jury was instructed, <u>inter</u> <u>alia</u>, that: "[a]rguments by lawyers are not evidence," and that, " if [the jurors'] recollection of the facts differs from the lawyer's statement, it is [each juror's] recollection which controls." Additionally, the jury was instructed on the subject of calculating damages. "'It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge.'" Britt v. Garcia, 457 F.3d 264, 272 (2d Cir. 2006)(quoting United States v. Pforzheimer, 826 F.2d 200, 205 [2d Cir. 1987]). Neither the trial record, nor MNCR's submission in connection with its motion, provide any basis for concluding that the jury did not follow the instructions given by the Court. As such, it is presumed that the jurors found the facts, and applied the law as given by the Court to the facts they found to produce their verdict, and did not rely on remarks made by Szaroleta's attorney during opening or closing statements to reach their verdict. See <u>Britt</u>, 457 F.3d at 272.

MNCR maintains that, at trial, Szaroleta was asked to draw a diagram for the improper purpose of evoking sympathy from the jury because of the symptoms Szaroleta exhibited of his Kennedy's Disease condition. MNCR did not object to the creation of this diagram at trial. See <u>Hardy</u>, 52 F. Supp. 2d at 340 (finding that failure to raise an issue at trial bars a party from raising that issue in a Rule 59 motion). The record shows that, on cross-examination of Szaroleta, MNCR elicited testimony regarding the symptoms Szaroleta experienced as a result of his Kennedy's Disease condition, which included, in the words of the MNCR attorney, "widespread twitching as well as tremors [in Szaroleta's] upper extremities," "muscle cramps," "exhaust[ion]," and, possibly, a "weak[ness]" in his knees. As a result, Szaroleta's display of such symptoms at trial was "cancelled out" by defense counsel's elicitation of testimony describing these symptoms. See <u>Greenway v. Buffalo Hilton Hotel</u>, 143 F.3d 47, 52 (2d Cir.

13

1998) (finding that defense counsel's reference, during summation, to the plaintiff's "gay lifestyle" "entitled plaintiff's counsel to use the illustrative analogy of discrimination against homosexuals," since the "two comments cancelled each other out").

Verdict Not Against the Weight of the Evidence

In the instant case, the Court cannot conclude that the jury's verdict was against the weight of the evidence or that it constituted a miscarriage of justice. See DLC Management Corp., 163 F.3d at 133. Substantial evidence in the record supports a finding that, on January 8, 2007, Szaroleta was employed by MNCR as an engineer and, that, on that date, the train he operated was configured in such a way that Szaroleta was stationed in the same car as some of the train's passengers. The record shows that no person(s), other than a MNCR employee(s), was authorized to enter the engineer's cab and, that, the door leading to the engineer's cab, on the train Szaroleta was operating, had neither a lock nor any signage indicating that passengers were barred from entering the cab while the train's engineer was employed inside. Moreover, no MNCR conductor or assistant conductor was assigned to manage exclusively the passenger car where the engineer's cab was situated to ensure that passengers would not enter the cab while the train was being operated. Under these circumstances, a jury could find it was reasonably foreseeable that a passenger could enter the engineer's cab while an engineer was within the cab operating the train.

III.     Fed. R. Civ. P. 62 Motion

Federal Rule of Civil Procedure 62(f) provides that, "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." The defendant

asserts it is entitled to a stay of proceedings to enforce the judgment, under New York law, and, in support, makes citation to New York Civil Practice Law and Rules ("CPLR") § 5519(a)(1). CPLR § 5519(a)(1) governs the issuance of a stay of enforcement of a judgment without a court order and provides that:

> [s]ervice upon the adverse party of a notice of appeal or an affidavit of intention to move for permission to appeal stays all proceedings to enforce the judgment or order appealed from pending the appeal or determination on the motion for permission to appeal where: . . . the appellant or moving party is the state or any political subdivision of the state or any officer or agency of the state or of any political subdivision of the state.

To obtain the benefits of CPLR § 5519(a)(1), one must serve either a notice of appeal or an affidavit of intention to move for permission to appeal. The defendant's memorandum of law in support of its motion notes only that the defendant "will file" a notice of appeal. Consequently, MNCR has not met the requirements of CPLR § 5519(a)(1), for securing a stay of the proceeding to enforce a judgment, because a memorandum of law is neither a notice of appeal, see Fed. R. App. P. 3, nor an affidavit. Therefore, the defendant's Fed. R. Civ. P. 62(f) application is denied. Furthermore, the defendant's request for a stay, pursuant to Fed. R. Civ. P. 62(b), pending the disposition of this motion, is denied, as moot.

## IV. CONCLUSION

For the reasons set forth above, the defendant's motion, Docket Entry No. 36, is denied, and the Court allows judgment on the jury's verdict.

Dated: New York, New York  
October 20, 2008

SO ORDERED:

_Kevin Nathaniel Fox_  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

15